Wanamaker, J.
The sole question in this case is this: Does the affidavit in attachment, especially in conjunction with the verified petition, present a ground of attachment without bond under the provision of Section 10253, General Code, upon the theory that “the claim is for a debt or demand arising upon contract, judgment or decree?”
It is substantially admitted in this case by counsel upon both sides, as well as by the court of appeals reversing the court of common pleas, that if the case of Weirick v. Mansfield Lumber Co., 96 Ohio St., 386, applies to the case at bar a contrary judgment should have been rendered by the court of appeals; that is, instead of reversing the court of common pleas it should have affirmed the court of common pleas.
But the court of appeals in its opinion reviews the. Weirick case, and holds that it is clearly distinguishable in principle from the case at bar. At the threshold of this opinion, therefore, it is pertinent to inquire:
1. What the Weirick case was.
2. What was decided in that case?
The Weirick case likewise involved:
(a) A sale of stock.
(b) The allegation that stock was sold upon false and fraudulent representation, and that as a matter of fact it was wholly worthless.
*221 (c) An affidavit in attachment upon the ground of non-residence was duly filed, and a writ of attachment issued.
(d) The question arose as to the sufficiency of fact in that attachment affidavit in order to comply with the statute authorizing, the writ of attachment. That question is not in this case, except as it involves the matter of law.
(e) The Weirick case did involve the question of "what is meant by the language in Section 10253, General Code, particularly the words, “the claim for a debt or demand arising upon contract.” True, the syllabus itself does not deal with this phase of the question. . The opinion clearly shows that challenge had been made as to this language in that the verified petition and the affidavit in attachment did not show such a claim, and that is the vital question in this case. .
The syllabus is the language of the court. The opinion is more particularly the language of the judge preparing the same, and yet so much of the opinion as is reasonably necessary to sustain the judgment must of necessity be concurred in by the court.
In this behalf the language of the opinion, dealing directly with the words “arising upon contract,” reads as follows, at page 401:
“The language of the affidavit clearly shows that the claim arose out of a sale of stock and that said sale was brought about by fraud and deception upon the part of the defendant Walters.
“There might be a question as to whether the fraud preceded the contract or the contract pre *222 ceded the fraud. This may well be left to the casuist.
“One thing is quite sure, had there been no fraud there would have been no contract, and had there been no contract there would have been no fraud.
“It might be more correct to say that the claim was one ‘arising from a contract,’ or ‘because of a' contract,’ or was one ‘arising upon fraud that induced a contract.’ But it is not the purpose of courts to play with phrases in order to juggle justice.
“There was a contract of sale. The plaintiff in error paid his money pursuant to that contract. His injury was due to that contract, and no matter how deep such contract may have been steeped in crookedness and crime, within the spirit of the law this wa,s a claim ‘arising upon contract.’ Here is a practical illustration of ‘The letter killeth, but the spirit giveth life.’
“It must be admitted that if the contract were an honest one, and culminated in a promissory note, upon which suit was brought, and an attachment ordered and had, that then clearly said claim, would be, one ‘arising upon contract.’ When, however, the contract made by the parties is crooked, fraudulent or criminal, and the party seeks to recover back the. money paid upon such contract, why should it then be held that it sounds exclusively in tort and the right of attachment does not exist?
“The plain paramount purpose of this statute was to provide a remedy for an injury within, the scope of the several statutes providing for attach *223 ment; that injury was not to be limited merely to honest transactions and honest debts resulting therefrom, but certainly with equal force and reason applies to dishonest transactions inducing contracts growing out of frauds and crimes. To hold that the attachment statutes related only to the former, and did not include the latter, is too absurd to require further argument. It is just such judicial jugglery that has put some courts into deserved disrepute. Such distinctions are too technical to promote justice, and the legislature evidently meant what it said when it laid down for courts the rule of construction in such cases in the following language, ‘shall be liberally construed, in order to promote its object, and assist the parties in ob-taining justice/
“Within the provisions of this statute the claim was one ‘arising upon contract,’ and the ‘nature of the plaintiff’s claim’ was sufficiently shown by the affidavit.
“And the further fact that the affidavit charges fraud in connection with the contract shows sufficiently that the debt or claim was fraudulently incurred.
“This is not inconsistent with the claim that it arose on contract, because a contract may grow out of dishonest as well as honest transactions.”
These quotations from the Weirick case, decided in 1917, and in which all the judges concurred, seem to fit, indeed almost parallel, the case at bar. In both cases there is a sale of stock by private contract. In both cases that contract was induced or caused by false or fraudulent representations *224 duly pleaded. In both cases there was a substantial loss by reason of said false and fraudulent representations. In the Weirick, case the loss was pleaded impliedly as total; in the case at bar only partial, but in excess of fifty per cent. On its face it would appear that the essential facts of the Weirick case and the course of reasoning applied thereto should be decisive in the case at bar.
The Weirick case was under review in the court of appeals, which court in its opinion undertook to distinguish it, from the case at bar in the following respects:
“Justification for the proceedings is based upon the case of Weirick v. Lumber Co., 96 Ohio St., 386, and one must confess that that case, if taken in its entirety, might justify the argument that was made on behalf of the defendant in error in this section, but I think an analysis of the case will show that the case is clearly within the well-recognized rules already alluded to. That action was brought after a rescission of the contract that was made between the parties, and it was brought to recover the money that was paid by virtue of the contract, and clearly that would be an action based on a contract, either express or implied, and would be sustainable under the section of the statute above quoted. * * * In other words that action [in the Weirick case] sounded in contract and not in tort, while in the action at bar every single allegation of the petition is an action sounding in tort and not in contract. It is true the Supreme Court in the 96th Ohio State above referred to, used the word *225 ‘damages’ as they have in some other cases, meaning simply the amount of money to be recovered as distinguished from costs, while the prayer of the petition was not for an action in damages at all as we ordinarily use the term, but to recover the money upon a rescinded contract. The books are filled with cases where such action is an action in assumpsit, that is, upon a promise, express or implied, while in the action at bar there is. a prayer for damages of $21,500.00 after allowing the stock to be worth $3,500.00 and keeping the stock, and nowhere seeking or offering to put the defendant below in statu quo. * * * Had he seen fit to rescind this contract and bring his action to recover the money that he had paid with interest and costs, he would have brought himself squarely within the case in the 96th Ohio State, supra. 'Not having done so, it is clear that his action is founded on fraud and deceit and is not founded on a contract and, therefore, the attachment without a bond having been filed was null and void, and the judgment of the court below must be reversed and the case remanded for further proceedings in accordance with law.”
Let us now examine this doctrine of the court of appeals, upon which the case was reversed.
The organic law of the state of Ohio is found in our constitution. We have a “Bill of Rights,” in which individual inalienable rights of man are declared and defined and further constitutional guaranties provided for redress whenever those rights *226 are violated by somebodj^’s' wrong. We have no “Bill of Remedies.”
By Section 1 of the Bill of Rights, Article I of the Constitution, it is provided: “All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property,” etc.
By Section 16:
“All courts shall be open and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law,'” etc.
That “an ’injury” has been pleaded in this case, within the scope of these sections of the Bill of Rights, there is no question.
Under the old common-law pleading our Ohio Bill of Rights was much impaired and often sacrificed by legal quibbling and judicial juggling about whether or not the party injured had chosen the proper-remedy. The old reports are full of adjudicated cases where justice was substantially denied because the courts held that the wrong writ had been sued out; the wrong form of action had been brought under the old common-law practice of strict technical procedure, resulting in reversal after reversal, and very often in a final defeat of an otherwise just cause of complaint based upon a bona fide and substantial injury, in denial of the party’s constitutional right.
So odious and obnoxious did this condition of our jurisprudence become that almost three-quar *227 ters of a century ago the old common-law method of procedure, with its countless number of technical and superrefined forms of action, was abolished, and in place thereof, under the new code, was substituted simply a “civil action.”
This was intended to destroy the old order that had unduly magnified procedure so as to in fact minimize and mutilate the principle involved. The code wisely provided as to this single form of action, to protect one’s constitutional and statutory rights, that it should be brought by the filing of a petition, and, showing the designed and deliberate intention of simplification and liberal elasticity as to the form of action, the new code simply provided :
“Sec. 11305. The first pleading shall be the petition by the plaintiff, which must contain:
“1. A statement of facts constituting a cause of action in ordinary and concise language;
“2. A demand for the relief to which the plaintiff claims to be entitled. If the recovery of money is demanded, the amount shall be stated; and if interest is claimed, the time for which interest is to be computed shall be stated.”
The plain purpose of the general assembly by this provision was to abolish all these antiquated, technical forms of action, and the strict construction with which courts had adjudicated concerning them, and to substitute therefor, first,'the facts, setting forth “an injury” in ordinary and concise language, and, second, “the relief” demanded.
*228 The game of strategic, technical, shuttlecock pleading, to defeat substantial rights based on principle, was to be forever banished from our Ohio jurisprudence.
Unfortunately, many of the old courts called upon to construe the new code were out of sympathy with it and did their best to bleed it to death; but the plain provisions of the statute, notwithstanding these adverse decisions,- must nevertheless control.
The pleadings in this case, together with the evidence, clearly show that here was a contract entered into between parties for certain stock; that the contract was induced by false and fraudulent representations, to the damage of the party purchasing the stock; that he sued for the damage, as he had a right to do; and that in this respect, which is the center and soul of the action both in this and the Weirick case, he- was entitled to recover and meanwhile to attach to await the judgment below.
It matters not that in the one case there may have been a rescission, or an implied rescission, by reason of there being a total failure of consideration, whereas in the other the purchaser was disposed to hold what he had rather than surrender it and thus increase the loss.
Courts should keep in mind that an injury is pleaded upon the facts, and that relief is demanded in the shape of a judgment for money only, and that the attachment is only a temporary tying up of certain property — a sort of temporary execution in. advance of judgment, in order that there *229 may not be an entire failure of justice and judgment.
Courts owe no higher duty to both the public and the profession than the duty to simplify and stabilize the rules of law. Old-time classifications, countless in number, based largely upon fictions and technicalities, under the old common law, have no rightful place in the jurisprudence of the 20th century, especially under oür code practice. It is folly under the new code to talk about distinctions as to tort or contract, as applied to these two cases. In either of them the losing party is fairly entitled, under the pleadings and proof, to recover for any loss sustained by reason of the false and fraudulent representations by virtue, of which the contract was induced and entered into.
The judgment of the court of appeals is reversed and that of the court of common pleas’ is affirmed, upon the clear, convincing and conclusive authority of the Weirick case.

Judgment reversed.

Marshall, C. J., Johnson, Hough, Robinson and Matthias, JJ., concur.